UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

MICHAEL YANDAL                                                        PLAINTIFF

v.                                                                CIVIL ACTION NO. 5:10CV-P92-M

CITY OF MAYFIELD *et al.*                                           DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the complaint will be dismissed.

### I.

Plaintiff Michael Yandal, a federal inmate, filed a *pro se* complaint pursuant to 42 U.S.C. §§ 1983,[1] 1985 and 1986. He sues the City of Mayfield; the Mayfield Police Department (MPD); MPD Det. Jackson; MPD Capt. Hendley; MPD Cpl. Keller; and Hon. Thomas B. Russell, Chief Judge of the U.S. District Court for the Western District of Kentucky. Plaintiff sues Defendants in their individual and official capacities and seeks "judgment, including interest, against the Defendants in the amount deemed by this Court to be just and fair."

Plaintiff alleges that on June 23, 2005, at approximately 1:00 a.m., Defendants Jackson, Keller, and Hendley conducted an unlawful search of his vehicle following a traffic stop, allegedly conducted on the basis of a fabricated excessive-window-tint violation. The allegedly unlawful search by a canine unit yielded the discovery of three different narcotics. Plaintiff

---

[1] Because § 1983 applies only to state actors, such an action cannot lie against Defendant Chief Judge Russell, a federal actor. A *Bivens* action, on the other hand, is a judicially created counterpart to a § 1983 action and pertains to suits filed against federal officials who have allegedly denied a plaintiff's constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390-97 (1971). The Court, therefore, construes the § 1983 action against Defendant Chief Judge Russell as being brought under *Bivens*.

indicates that he suspected that the purpose of the stop was racially motivated and voiced his opinion regarding this belief. Plaintiff claims that later that same day, Defendant Jackson "maliciously entered false testimony" before the Graves County Grand Jury. (Plaintiff later claims that Defendant Jackson also falsely testified at the federal suppression hearing on March 21, 2006.)

> As a result of the actions of the Defendants, Plaintiff was indicted under Indictment No. 05-CR-200, arrested, held for seven days in Graves County Jail, and required to post bail until Graves County Circuit Court dismissed the [felony charges related to the allegedly illegally seized contraband] on 10/10/2005. The Plaintiff was then indicted under Indictment No. 5:05CR25-R in federal district court on 10/11/2005, arrested, and required to post bail, forced to stand trial on 1/4/07 and 1/05, convicted on various felony charges, sentenced on 4/24/07, and currently serving an illegal sentence of 195 months.

The traffic charge of excessive window tint was dismissed by the Graves District Court on March 23, 2006.

Plaintiff claims that Defendants City of Mayfield and MPD failed to supervise or properly train Defendants Jackson, Hendley, and Keller and permitted them to commit the purported wrongdoing alleged in the complaint.

Plaintiff claims that Defendant Chief Judge Russell held a suppression hearing on February 21, 2006, with respect to the federal charges, and that on March 1, 2006, Defendant Chief Judge Russell denied Plaintiff's motion to suppress. Plaintiff claims that the suppression hearing was constitutionally flawed and violated *Younger v. Harris*, 401 U.S. 37 (1971) because the excessive-window-tint violation had not yet been ruled on in state court. Plaintiff further alleges that Defendant Chief Judge Russell constructively denied him the assistance of counsel in his state-court proceeding.

In addition to alleging federal constitutional violations under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, Plaintiff also alleges state-law claims of fraud, fabrication of probable cause, malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

### A. Federal claims

#### 1. Witness immunity

"It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) (citing *Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983)); *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 442 (6th Cir. 2006) ("[A]bsolute witness immunity applies to witness testimony before a grand jury."). "Thus, it is clear that [Defendant Jackson] would be insulated from liability for any testimony that he provided as a witness at trial, no matter how egregious or perjurious that testimony was alleged to have been." *Spurlock*, 167 F.3d at 1001. Defendant Jackson is, therefore, immune from suit with respect to Plaintiff's claims that he fabricated testimony before the Graves County Grand Jury and at the federal suppression hearing.

3

## 2. *Sovereign and judicial immunities*

The instant damages suit against Defendant Chief Judge Russell in his official capacity is actually a suit against the United States and is, therefore, barred by sovereign immunity. *See Cuevas v. Dep't of Homeland Sec.*, 233 F. App'x 642, 643 (9th Cir. 2007) ("Since the [United States] has not waived its sovereign immunity, the district court's dismissal of Cuevas' claims [against DHS officials sued in their official capacities] under 42 U.S.C. §§ 1983 and 1985 was proper."); *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000) ("Sovereign immunity, however, bars §§ 1985(3) and 1986 suits brought against the United States and its officers acting in their official capacity."); *Nuclear Transp. & Storage, Inc. v. United States*, 890 F.2d 1348, 1351-52 (6th Cir. 1989) (concluding that the United States has not waived its immunity to suit under *Bivens*).

The suit against Defendant Chief Judge Russell in his individual capacity is barred by absolute judicial immunity. "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "[Judicial] immunity is overcome in only two sets of circumstances." *Id.* "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Id.* "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12.

Plaintiff's claim that the federal court lacked jurisdiction over his criminal case while the excessive-window-tint charge was still pending in state court is without merit. Defendant Chief Judge Russell's holding of a suppression hearing and denial of the motion to suppress were judicial in nature, and he had jurisdiction over the federal criminal case. Absolute judicial

4

immunity, therefore, applies, and the action against Defendant Chief Judge Russell must be dismissed. *See, e.g., Van Sickle v. Holloway*, 791 F.2d 1431, 1435 (10th Cir. 1986) ("Whether the allegations with respect to these defendants are considered under a *Bivens* type of constitutional tort theory, or the allegations of a conspiracy are considered a violation of 42 U.S.C. § 1985, the federal judges in this case are absolutely immune from liability." (internal citations omitted)); *Travis v. Miller*, 226 F. Supp. 2d 663, 667 (E.D. Pa. 2002) (finding, in a suit brought under §§ 1983, 1985, and 1986, that "Judicial Defendants enjoy absolute immunity against suits for monetary damages regarding their judicial acts").

### 3. *Statute of limitations*

All remaining federal claims relate to the allegedly illegal search and seizure during and following a traffic stop. These claims are time-barred.

Because neither 42 U.S.C. § 1983 nor § 1985 contains its own statute of limitations, actions brought under these sections are governed by the limitations period for personal injury cases in the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (state statute of limitations applies to § 1983 actions); *Bowden v. City of Franklin*, 13 F. App'x 266, 272 (6th Cir. 2001) (state statute of limitations applies to § 1985 claims). In Kentucky, § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. § 413.140(1). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). An action pursuant to the *Bivens* doctrine is subject to the same statute of limitation as § 1983 actions. *McSurely v. Hutchison*, 823 F.2d 1002, 1005 (6th Cir. 1987). Although state law establishes the statute of limitations for the foregoing actions, federal law controls on the issue of when the statute of limitations begins to run. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Federal

5

law establishes that the statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). The Supreme Court has held that when the face of the complaint shows that an action is time barred, the case may be dismissed summarily upon screening. *See Jones v. Bock*, 549 U.S. 199, 215 (2007).

In the instant case, Plaintiff knew or had reason to know of his alleged injuries on June 23, 2005, the date of the allegedly illegal traffic stop, search, and seizure. Therefore, the limitations period expired a year later on June 23, 2006. Because Plaintiff did not file his complaint until April 30 2010,[2] nearly four years later, the §§ 1983 and 1985 claims are time-barred and must be dismissed as frivolous. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (dismissing a claim as frivolous where barred by the applicable statute of limitations).

Section 1986 contains its own statute of limitations. It provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986. As determined above, Plaintiff filed his complaint well outside the one-year limitations period. Consequently, the untimely § 1986 claim must also be dismissed as frivolous.

---

[2] Because Plaintiff is a prisoner, the "mailbox rule" applies and a civil action is deemed filed on the date that it is deposited in the prison mail system for mailing. *See Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002). Absent evidence to the contrary, the Court presumes that Plaintiff deposited his complaint in the prison mail system on April 30, 2010, the date of signing.

*B. State-law claims*

Plaintiff alleges the violation of several state causes of action. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Having determined that the federal claims over which this Court has jurisdiction should be dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Consequently, the state-law claims will be dismissed without prejudice.

The Court will enter a separate Order consistent with this Memorandum Opinion.

Date:


cc: Plaintiff, *pro se*
 Defendants
4414.005